GEORGE E. LAMICA AND WIFE, LOUISE W. LAMICA, ANTHONY J. VUCIC AND WIFE, JULIA M. VUCIC, VIRGINIA W. DIXON, WIDOW, J. F. HOWARD AND WIFE, RUBY HOWARD, DONALD E. WALKER AND WIFE, SYLVIA D. WALKER, VINCENT J. LINDENSCHMIDT AND WIFE, LILLIAN D. LINDENSCHMIDT, C. H. McKEITHAN AND WIFE, KATHLEEN M. McKEITHAN, v. JOHN HENRY GERDES, JR.

(Filed 12 April, 1967.)

1. **Deeds § 19—**
   Since encroachments of businesses and changes in condition outside the development are irrelevant to the question of the validity and enforceability of restrictive covenants within the development, allegations of encroachments outside the area are properly stricken on motion.

2. **Same—**
   Building restrictions are in derogation of the fee and are to be strictly construed, but such restrictions are not impolitic and may be enforced when reasonable and incidental to the enjoyment of the estate conveyed, are not contrary to public policy or in restraint of trade, and do not tend to create a monopoly.

3. **Same—**
   Whether restrictive covenants are personal to the grantor or are a servitude on the land, enforceable by owners of property in the develop-

ment, is to be ascertained on the facts of each particular case in accordance with the intent of the grantor and grantee.

**4. Same—**

When the deed expressly provides that the restrictive covenants therein contained should run with the land and should be enforceable by any person owning or purchasing real estate situate within the development, the covenants are enforceable by the owners of the lots in the development as third party beneficiaries, irrespective of the existence of a general scheme of development, the intent of the parties that the covenants should be a servitude on the land being clear.

**5. Same—**

The presence of restrictive covenants in any deed constituting a link in a party's chain of title is notice to such party of the existence of such covenants, and the covenants are binding upon him even though the immediate deed to him does not contain the restrictions; therefore, where the developer sells a lot subject to restrictions and thereafter the lot is reconveyed to him, and, in turn, is conveyed by him by deed not containing the covenants, the land remains subject to the covenants.

BOBBITT, J., dissents.

APPEAL by defendant from *Parker, J.,* 16 January 1967 Civil Session of NEW HANOVER.

Civil action by plaintiffs to obtain a permanent injunction to prevent defendant from building a dental and medical building on Lot 18 of Sherwood Forest subdivision in New Hanover County.

Richard A. Shew developed a subdivision in Wilmington known as Sherwood Forest, and sold lots within the subdivision. By deed recorded in Book 678, at page 481, Registry of New Hanover County, Shew and his wife conveyed Lot 18 within the subdivision to Hilda G. Stanley as trustee for Ethel S. Wrublewski. The deed was the usual warranty deed, and contained the following pertinent restrictions:

> "1. All lots to be used for residential purpose and not to be used for commercial purposes, and no dwelling shall be erected on any lot other than one detached single family dwelling, not to exceed two and a half stories in height and a one or two car garage."
>
> "7. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1981, at which time said covenants shall be automatically extended for successive periods of ten years, unless by vote of the majority of the then owners of the lots it is agreed to change the said covenants in whole or in part.
>
> "8. If said parties thereto, or any of them or their heirs and assigns, shall violate or attempt to violate any of the cov-

enants herein, it shall be lawful for any other person or person(s) owning any real property situate in said development or subdivision to prosecute any proceeding at law or in equity against the person or persons violating or attempting to violate any such covenant, and either to prevent him or them from so doing to recover damages or other dues for such violation."

Lot 18 was reconveyed to Shew by Hilda Stanley, Trustee, and the Wrublewskis by deed of record in Book 719, at page 392, Registry of New Hanover County, which deed contained the following provision:

"This conveyance is made subject to certain restrictive covenants as to the use of said property which said restrictions are contained in said deed recorded in Book 678 at page 481, reference to which is hereby made for a full and complete list of same, and which are herein incorporated by reference and made a part hereof."

Thereafter, Shew, by warranty deed, conveyed this same property to defendant. The only restriction contained or referred to in this deed was that building plans should first be submitted to and approved by the grantor, Shew.

The allegations and admissions in the pleadings disclose that all of the property in said subdivision was used solely for residential purposes. The developer had sold twenty lots and portions of two others, and one of the lots and a portion of another lot were sold unrestricted. Further, that developer retained the remaining unsold portions of the subdivision free of any restrictions.

Defendant began construction of a dental-medical building on Lot 18, at which time this action was brought by plaintiffs, all residents and owners of real property within the subdivision. Issues submitted to the jury were, in substance, whether developer conveyed Lot 18 in the subdivision by deed which was one of the links in defendant's chain of title and contained restrictions set out above, and as to whether plaintiffs owned real property situate in the subdivision. All issues were answered by the jury in favor of plaintiffs and judgment was entered thereon, from which defendant appeals.

*Lloyd S. Elkins, Jr., for plaintiffs.*
*Marshall & Williams for defendant.*

BRANCH, J. We find no merit in appellant's contention that the court erred in striking from his answer allegations as to changed

conditions and zoning. This Court has heretofore stated that, " 'It is generally held that the encroachments of business and changes due thereto, in order to undo the force and validity of the restrictions, must take place *within* the covenanted area.' " Also, " 'A valid restriction on the use of real property is neither nullified nor superseded by the adoption or enactment of a zoning ordinance, nor is the validity of the covenant thereby affected.' " (Emphasis ours) *Tull v. Doctors Building, Inc.,* 255 N.C. 23, 120 S.E. 2d 817.

Appellant's primary contention is that the restrictions are unenforceable by plaintiffs because there is no general plan or scheme of development and because the covenants are personal to the original developer. Without determining whether the instant facts show existence of a general plan or scheme of development within the subdivision, we are at the outset faced with the question whether plaintiffs need prove that such plan existed in order to enforce the restrictions imposed.

This Court has long held that restrictive covenants "are in derogation of the full and unfettered use of land" and are to be strictly construed. *Callaham v. Arenson,* 239 N.C. 619, 80 S.E. 2d 619. However, it has been repeatedly recognized in this jurisdiction that:

> "The courts have generally sustained covenants restricting the use of property where reasonable, not contrary to public policy, not in restraint of trade and not for the purpose of creating a monopoly — and building restrictions have never been regarded as impolitic. So long as the beneficial enjoyment of the estate is not materially impaired and the public good and interest are not violated such restrictions are valid. Subject to these limitations the court will enforce its restrictions and prohibitions to the same extent that it would lend judicial sanction to any other valid contractual relationship." *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344.

The restrictions imposed in the instant case do not come within the above prohibitions and their validity is not otherwise questioned.

This case exemplifies a large number of situations wherein the grantor has conveyed property within a subdivision subject to restrictions, without imposing similar restrictions on property retained by him. This Court, in *Reed v. Elmore,* 246 N.C. 221, 98 S.E. 2d 360, recognized that in such cases it must be determined whether the grantor *intended* to create a negative easement benefiting all the property, or whether he imposed the restrictions for his personal benefit, and evidence regarding a uniform plan is admitted as an expression of the grantor's intentions. Considering restrictive covenants in the *Reed* case, the Court stated:

". . . Where the grantor has, by uniformity of the conditions imposed with respect to a given area, evidenced his intention to create mutual servitudes and benefits, the restrictions are held to be covenants running with the land. Where there is absence of uniform pattern, the intention is not established; hence, the covenants or restrictions or conditions are held to be personal to the grantor. . . . Uniformity of pattern with respect to a development furnishes evidence of the intent of the grantor to impose restrictions on all of the property and when the intent is ascertained it becomes binding on and enforceable by all immediate grantees as well as subsequent owners of any part of the property; *but the fact that there is an absence of uniformity in the deeds does not prevent the owner of one lot from enforcing rights expressly conferred upon him by his contract.* 'Contractual relations do not disappear as circumstances change.' . . . (Emphasis ours)

. . . . .

"Plaintiff, when he purchased, heeded the warnings of Justice Connor and caused to be inserted in the deed to him this provision: 'This restriction shall likewise apply to Lot No. 4, retained by the grantor, said Lot No. 4 being adjacent to lands hereby conveyed.' Note the restriction is not on the grantor. It is imposed on the land of grantor. It was a *creation of a servitude* on the land irrespective of ownership. *There is no need to search for grantor's intent. It is clearly and distinctly expressed.*" (Last emphasis ours)

The application of the principles of law enunciated by this Court regarding restrictive covenants is, of course, governed by the factual situation of the particular case. *Ingle v. Stubbins,* 240 N.C. 382, 82 S.E. 2d 388. Factually, the instant case differs from *Humphrey v. Beall,* 215 N.C. 15, 200 S.E. 918, and other cases relied on by appellant, in that here it is expressly provided by deeds appearing in defendant's chain of title that the covenants are to run with the land, and the deed specifically gives the developer's grantees, the owners of lots in the subdivision, the right to enforce the covenants *inter se.*

Considering the effect of covenants in a purchaser's chain of title, the Court in *Higdon v. Jaffa,* 231 N.C. 242, 56 S.E. 2d 661, said:

"Furthermore, covenants limiting the use of land may be enforced against a subsequent purchaser who takes title to the land with notice of the restrictions. *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697. The law contemplates that a purchaser of land will examine each recorded deed or other instrument in

his chain of title, and charges him with notice of every fact affecting his title which such an examination would disclose. In consequence, a purchaser of land is chargeable with notice of a restrictive covenant by the record itself if such covenant is contained in any recorded deed or other instrument in his line of title, even though it does not appear in his immediate deed. *Sheets v. Dillon*, 221 N.C. 426, 20 S.E. 2d 344; *Turner v. Glenn*, 220 N.C. 620, 18 S.E. 2d 197; *Bailey v. Jackson, supra.*"

Whether covenants imposed on land by a grantor are a servitude on the land, enforcible by plaintiffs, or merely a personal obligation to developer, is answered by ascertaining the intention of the grantor and the grantee when the sale and purchase was consummated. Ordinarily this is done by interpreting the language which the parties chose to express that intention. If doubt exists as to the meaning of the language used, it is proper to consider the situation of the parties and the situation dealt with. *Reed v. Elmore, supra.* In the case of *Cejka v. Korn*, Mo. App., 127 S.W. 2d 786, the Court held:

". . . We have in mind that restrictive covenants in a deed to be enforceable by a third party must be shown to have been put on defendant's property for the benefit of the land owned by plaintiff, and in determining this question we must endeavor to arrive at the party's intention who originally created the restrictions. *Toothaker v. Pleasant*, 315 Mo. 1239, 288 S.W. 388; *Coughlin v. Barker*, 46 Mo. App. 54."

Here, there is no need to search for the grantor's intent. The developer clearly and distinctly expressed an intention to impose the restrictions on the land, and to allow any person or persons owning any real property situate in said development or subdivision to enforce the restrictions *inter se*. If there were any ambiguity in the language of the grantor as to whether the developer intended to impose restrictions for his personal benefit, it is dispelled by his outright grant to his grantees of the right to enforce the restrictions.

"*Sometimes restrictive covenants expressly provide that they may be enforceable by any owner of property in the tract. Where such is the case, the right of an owner to enforce the same is, of course, clear.* Similarly, where the agreement declares that the covenant runs with the land for the benefit of other lots or other owners, it may be so enforced." 20 Am. Jur., 2d, § 292, p. 857. (Emphasis ours).

The grantor expressly made the plaintiff and other owners of property in the subdivision third party beneficiaries of the con-

tractual provisions contained in conveyances in defendant's chain of title. "A third party may sue to enforce a valid contract made for his benefit even though he is a stranger to the contract and to the consideration, and it is not necessary that he be the sole beneficiary, provided the contract was entered into for his direct benefit and the benefit to him is not merely incidental to the agreement." Strong: N. C. Index, Vol. 1, Contracts, § 14, p. 586. See also *Pickelsimer v. Pickelsimer*, 255 N.C. 408, 121 S.E. 2d 586, and *Trust Co. v. Processing Co.*, 242 N.C. 370, 88 S.E. 2d 233.

It makes no difference in the instant case that the property was repurchased by the grantor before being sold to the defendant. In *Higdon v. Jaffa, supra*, all the original deeds contained the following provisions: "Nothing herein contained shall be held to impose any restrictions on or easements in any land of the Stephens Company not hereby conveyed." Considering this, the Court, *inter alia*, said:

> ". . . It (the developer) sold every lot in the subdivision subject to restrictive covenants limiting its use to residential purposes. In so doing, the Stephens Company rendered the stipulation in question wholly nugatory. It did not revive this clause by repurchasing Lots Nos. 1, 2, and 3 of Block 11-D. This is necessarily so because its re-acquirement of those lots was under chains of title subjecting them to the restrictive covenants. . . ."

Plaintiffs' action is not dependent on a general plan for the development of the property, but is based upon express covenants appearing in defendant's recorded chain of title which specifically grant to the plaintiffs the right to enforce the restrictions.

No error.

BOBBITT, J., dissents.