BEECH MOUNTAIN PROPERTY OWNERS' ASSOCIATION v. RICHARD N. CURRENT AND ROSE B. CURRENT

BEECH MOUNTAIN PROPERTY OWNERS' ASSOCIATION v. THOMAS MOORE, JR., AND GEORGE K. CUTTER

No. 7724DC101

(Filed 24 January 1978)

**Deeds § 20.6— restrictive covenants—no enforcement by property owners' association**

> An association of property owners which was a corporate entity not owning any property in a resort development did not have the right to enforce restrictive covenants in deeds to owners of lots in the development requiring the lot owners to pay dues and assessments to the association where the developer granted the right of enforcement of restrictions to owners of lots in the development but did not authorize the association to enforce the restrictions as an agent of the lot owners.

APPEAL by plaintiff from *Braswell, Judge.* Judgment entered 16 November 1976 in District Court, WATAUGA County. Heard in the Court of Appeals 17 November 1977.

Civil actions wherein plaintiff, Beech Mountain Property Owners' Association (hereinafter "POA"), instituted separate actions against defendants Richard and Rose Current (hereinafter "defendants Current"), and defendants Thomas Moore, Jr., and George K. Cutter (hereinafter "defendants Moore/Cutter"), for dues and assessments allegedly owed pursuant to restrictive covenants. The cases were consolidated for trial.

The following facts established by the record are not controverted: Beech Mountain is a resort complex located in the mountains of North Carolina which was developed in the late sixties by Carolina Caribbean Corporation. The development now comprises ski slopes, a swimming pool, a golf course, tennis courts, hiking trails, hotels, shops, and residential lots. All lots were sold subject to one of four sets of restrictions incorporated in the deeds and recorded in the Public Registry of Watauga County. Among the restrictions applicable to the lots purchased by the defendants Current and defendants Moore/Cutter were provisions for the formation of a Property Owners' Association and the establishment of annual assessments by its membership.

Pursuant to these provisions the Beech Mountain POA was formed by some of the property owners of Beech Mountain. Dues and assessments paid by its members currently enable the POA to maintain and operate 58 miles of roads, a golf course, a swimming pool, tennis courts, hiking trails, ski slopes, a security system, and a fire department.

In 1968 defendants Current executed an agreement with Carolina Caribbean Corporation to purchase a lot at a later time. Defendants Moore/Cutter signed a similar agreement in the same year. The defendants later selected their respective lots and received deeds from Carolina Caribbean Corporation. None of the defendants joined the POA or paid any dues or assessments in the period following the purchases. The Carolina Caribbean Corporation eventually filed for bankruptcy, and its assets were assumed by a receivership.

The trial court entertained motions for summary judgment by both parties. From a judgment granting defendants' motion, plaintiff appealed.

*Finger, Watson and di Santi, by C. Banks Finger and Anthony S. di Santi, for the plaintiff appellant.*

*Smith, Moore, Smith, Schell and Hunter, by David M. Moore II; Hudson, Petree, Stockton, Stockton and Robinson, by James H. Kelly, Jr.; Thomas F. Moore, Jr.; and Charles E. Clement and Paul E. Miller, Jr., for the defendant appellees.*

HEDRICK, Judge.

The substantive question raised on this appeal is whether the restrictions referred to above are enforceable. However, it is elementary that the substantive issues cannot be considered unless the party raising them has the capacity to do so. *Bailey v. Light Co.,* 212 N.C. 768, 195 S.E. 64 (1938). Thus, the defendants' challenge to the plaintiff's standing to assert the claims herein demands our immediate attention.

Our Supreme Court has recognized on numerous occasions the general rule that "[a] restriction which is merely a personal covenant with the grantor does not run with the land and can be enforced by him only." *Stegall v. Housing Authority,* 278 N.C. 95, 100, 178 S.E. 2d 824, 827 (1971). *See also* Webster, Real Estate

Law in North Carolina, § 346(c) (1971). It is equally well-established that where an owner subdivides his land and sells it to various grantees, " 'imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, . . . .' " *Sedberry v. Parsons*, 232 N.C. 707, 710, 62 S.E. 2d 88, 90 (1950), *quoting* 26 C.J.S., *Deeds*, § 167(2). The party claiming the benefit of a restriction assumes the burden of showing that the restriction is not personal, but is a covenant running with the land and thus enforceable by another grantee. *Stegall v. Housing Authority, supra.* The defendants contend that since different sets of restrictions were imposed on different parcels of land there was no uniformity in the plan of development and thus the restrictions imposed were personal and enforceable only by the grantor, Carolina Caribbean Corporation.

The defendants' contention need not be examined if the principle set forth in *Lamica v. Gerdes*, 270 N.C. 85, 153 S.E. 2d 814 (1967), is applicable to the facts of the present case. In *Lamica* the court observed that the dispositive factor in determining whether a restriction was enforceable only by the grantor or by other grantees is "whether the grantor *intended* to create a negative easement benefiting all the property, or whether he imposed the restrictions for his personal benefit, . . . ." *Lamica v. Gerdes, supra* at 88, 153 S.E. 2d at 816. If the grantor's intent is clearly reflected in an express provision conferring to other property owners the right to enforce the restrictions, then the other owners are third party beneficiaries and may sue to enforce the contract between the grantor and grantee. *Lamica v. Gerdes, supra; Reed v. Elmore*, 246 N.C. 221, 98 S.E. 2d 360 (1957).

Plaintiff asserts as its authority to enforce the restrictions the following provisions which appear in the Declaration of Restrictions applicable to each defendant's deed:

"[A]ll covenants, restrictions and affirmative obligations set forth in this Declaration shall run with the land and shall be binding on all parties and persons claiming under them . . . .

"In the event of a violation or breach of any of these restrictions by any property owner, or agent, or agent of such owner, the owners of lots in the neighborhood or subdivision, or any of them jointly or severally, shall have the

right to proceed at law or in equity to compel a compliance to the terms hereof or to prevent the violation or breach in any event."

The grantor, Carolina Caribbean Corporation, clearly and expressly conferred on "the owners of lots in the neighborhood or subdivision, or any of them jointly or severally" the status of third party beneficiaries with the right to sue to enforce the restrictions. *Lamica v. Gerdes, supra.* The question which emerges from the foregoing analysis is whether the grantor intended this right of enforcement to extend to the POA, an association of property owners. The defendants argue that since plaintiff is a corporate entity owning no property at Beech Mountain, it cannot claim the benefit of the provisions above. The plaintiff contends, on the other hand, that it was at least implicit in the pertinent provisions that the grantor considered the POA to be an agent possessing the owners' right to enforce the restrictions. In support of its contention plaintiff points to language immediately preceding the quoted provisions which allegedly require every property owner to join the POA.

Restrictive covenants are "in derogation of the free and unfettered use of land [and] are to be strictly construed so as not to broaden the limitation on the use." *Reed v. Elmore, supra* at 224, 98 S.E. 2d at 363. This rule of strict construction also guides us in the determination of whether a party seeking to enforce the restriction has sufficient interest to do so. *Sleepy Creek Club, Inc. v. Lawrence,* 29 N.C. App. 547, 225 S.E. 2d 167 (1976). Plaintiff relies on *Neponsit Property Owners' Ass'n v. Bank,* 278 N.Y. 248, 15 N.E. 2d 793 (1938), to buttress its argument that the grantor clearly expressed its intent in the provisions quoted above that the POA act as the agent for the owners in enforcing the restrictions. The contrast between the applicable provisions in *Neponsit* and those upon which the plaintiff relies in the present case would seem to compel the opposite conclusion. In *Neponsit,* as in this case, there were provisions for the payment of assessments which were to be applied to the maintenance of roads and other public purposes. The covenant also provided that "[t]he assigns of the party of the first part [the grantor] may include a Property Owners' Association which may hereafter be organized . . . ." *Neponsit Property Owners' Ass'n v. Bank, supra* at ---, 15 N.E. 2d at 794. The enforcement provision followed:

"And the party of the second part by the acceptance of this deed hereby expressly vests in the party of the first part, its successors and *assigns*, the right and power to bring all actions against the owner of the premises hereby conveyed or any part thereof for the collection of such charge and to enforce the aforesaid lien therefor."

*Neponsit Property Owners' Ass'n v. Bank, supra* at ---, 15 N.E. 2d at 794-5. The court stated that the only reasonable interpretation of the covenants was that the grantor "intended that the covenant should run with the land and should be enforceable by a property owners association against every owner . . . ." *Neponsit Property Owners' Ass'n v. Bank, supra* at ---, 15 N.E. 2d at 795. The court then concluded that the plaintiff was empowered to bring the action as an assignee of the grantor. *See also Merrionette Manor Homes Improvement Ass'n v. Heda,* 11 Ill. App. 2d 186, 136 N.E. 2d 556 (1956); Annot., 51 A.L.R. 3d 556 (1973). The covenant in the *Neponsit* deeds expressly conferred a right of action on the grantor's "assigns," which expressly included the property owners' association. Those provisions are a model of clarity in comparison with the provisions in the Beech Mountain deeds. The case affords the plaintiff no support.

We are of the opinion that a strict construction of the provisions in the present case compels the conclusion that the plaintiff lacks the capacity to raise the issues in this suit. The plaintiff is a corporation and, as such, must be viewed as an entity distinct from its individual members. *Troy Lumber Co. v. Hunt,* 251 N.C. 624, 112 S.E. 2d 132 (1960). Since that entity owns no property at Beech Mountain it cannot claim the benefit of the provision in the Declaration of Restrictions granting the right of enforcement of the restrictions to "the owners of lots . . . or any of them jointly or severally . . . ." And we must assume that if the grantor had intended to authorize the plaintiff to enforce the provisions as an agent of the property owners, it would have expressed such intent.

Since the plaintiff lacks the capacity to assert its claims, we do not reach the substantive issues in this suit. Accordingly, summary judgment for the defendants was proper.

Affirmed.

Judges MORRIS and ARNOLD concur.